UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------------------------------------X
TRUSTEES OF THE PLUMBERS LOCAL UNION
NO. 1 WELFARE FUND, ADDITIONAL SECURITY
BENEFIT FUND, VACATION & HOLIDAY FUND,
TRADE EDUCATION FUND AND 401(k) SAVINGS
PLAN, and George W. Reilly, as business manager
of Local Union No. 1 of the United Association of
Journeymen and Apprentices of the Plumbing and
Pipefitting Industry of the United States and Canada,

         Plaintiffs,

     -against-            REPORT &
                    RECOMMENDATION
                    CV-07-5150 (SJ)(SMG)

GENERATION II PLUMBING & HEATING, INC.,

         Defendant.
----------------------------------------------------------------------X
GOLD, S., *United States Magistrate Judge*:

## Introduction

   Plaintiffs, trustees of various employee benefit funds (collectively, the "Funds") and the business manager of Local Union No. 1 of the United Association of Journeymen and Apprentices of the Plumbing and Pipefitting Industry of the United States and Canada (the "Union"), bring this action pursuant to the Employer Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. §§ 1132 and 1145, and the Labor Management Relations Act, 29 U.S.C. § 185. Plaintiffs seek to recover amounts allegedly owed by defendant Generation II Plumbing & Heating, Inc. ("Generation II") for delinquent contributions and union dues. Plaintiffs also seek a permanent injunction directing Generation II to submit required contribution reports, pay fringe benefit contributions and submit to an audit in compliance with the terms of a

Collective Bargaining Agreement ("CBA") and Restated Agreements and Declarations of Trust ("Trust Agreements").

Upon plaintiffs' application and in light of defendant's failure to appear in or otherwise defend this action, the Clerk of the Court noted the default of the defendant. Docket Entry 7. The Honorable Sterling Johnson Jr. then referred the matter to me to conduct an inquest and to report and recommend on the amount of damages, if any, to be awarded.

Plaintiffs have submitted an affirmation of their counsel ("Virginia Aff.") as well as exhibits in support of their application for damages. Docket Entries 5, 9. I determine what damages to recommend based on these submissions.

## Discussion

*1.   Liability*

Once found to be in default, a defendant is deemed to have admitted all of the well-pleaded allegations in the complaint pertaining to liability. *See Greyhound Exhibitgroup, Inc., v. E.L.U.L. Realty Corp.*, 973 F.2d 155, 158 (2d Cir. 1992), *cert. denied*, 506 U.S. 1080, 113 S. Ct. 1049 (1993); *Montcalm Pub. Corp. v. Ryan*, 807 F. Supp. 975, 977 (S.D.N.Y. 1992). Even after a defendant has defaulted, "[a] plaintiff must . . . establish that on the law it is entitled to the relief it seeks, given the facts as established by the default." *U.S. v. Ponte*, 246 F. Supp. 2d 74, 76 (D. Me. 2003) (citation omitted). *See also Au Bon Pain Corp. v. Artect, Inc.*, 653 F.2d 61, 65 (2d Cir. 1981).

Plaintiffs have established the elements of liability required to state a claim pursuant to 29 U.S.C § 1145. Generation II signed a letter of assent dated August 22, 2002, obliging it to comply with the terms of a CBA effective July 1, 2000 through June 30, 2004 ("2000-2004 CBA")

2

and any amendments, renewals or extensions to the 2000-2004 CBA. Virginia Aff., Docket Entry 5-4, Exs. A & B, Docket Entries 5-5 and 5-6. A successor agreement went into effect from July 1, 2004 through June 30, 2007 ("2004-2007 CBA"), to which Generation II was bound. *Id*. ¶¶ 10-12, Ex. C. Pursuant to the CBAs, Generation II was required to make contributions on behalf of its employees to the Funds and to remit dues to the Union. Compl. ¶¶ 10, 12. In their complaint, plaintiffs allege that Generation II failed to make contributions for the period from January 1, 2005 to December 31, 2005. *Id*. ¶¶ 14-18. Generation II's failure to make contributions as required by the CBA and Trust Agreements constitutes a violation of ERISA, and its liability has therefore been established.

Plaintiffs also seek delinquency charges associated with the unpaid contributions and dues. In their complaint, plaintiffs demand delinquency charges on the unpaid contributions alleged to be owed to the Funds, as well as attorney's fees and costs incurred to recover these contributions. The complaint, however, does not demand such damages on the unpaid dues alleged to be owed to the Union; plaintiffs did not demand these amounts until they filed their motion for default judgment. *Compare id*. ¶¶ 19, 43-44, Wherefore cl. *with* Virginia Aff. ¶¶ 20-21. Federal Rule of Civil Procedure 54(c) generally limits recovery on a default judgment to the relief sought in the complaint. FED. R. CIV. P. 54(c) ("A default judgment must not differ in kind from, or exceed in amount, what is demanded in the pleadings."). By requesting damages associated with the unpaid dues in their motion for default judgment, plaintiffs now seek a judgment "different in kind" from that demanded in their complaint in violation of Rule 54(c). *See Silge v. Merz*, 510 F.3d 157, 160 (2d Cir. 2007) (declining to award pre-judgment interest where plaintiff failed to include a "distinct claim" for such damages in the demand clause, and

3

noting that "[b]y operation of Rule 54(c), his failure to do so, intentional or not, ran the risk that his damages would be limited in the event of default."). Accordingly, I recommend that the Union not be awarded interest or liquidated damages associated with the unpaid dues.

2. *Damages*

Although the allegations of a complaint pertaining to liability are deemed admitted upon entry of a default judgment, allegations relating to damages are not. *See Greyhound Exhibitgroup*, 973 F.2d at 158. Rather, claims for damages generally must be established in an evidentiary proceeding at which the defendant is afforded the opportunity to contest the amount claimed. *Id.* A court must ensure that there is a basis for the damages sought by a plaintiff before entering judgment in the amount demanded. *See Fustok v. ContiCommodity Services, Inc.*, 873 F.2d 38, 40 (2d Cir. 1989). A court may make this determination based upon evidence presented at a hearing or upon a review of detailed affidavits and documentary evidence. *See* FED. R. CIV. P. 55(b)(2); *Action S.A. v. Marc Rich & Co., Inc.*, 951 F.2d 504, 508 (2d Cir. 1991); *Fustok*, 873 F.2d at 40. Defendant has not submitted any opposition to plaintiffs' motion. Accordingly, a hearing on the issue of damages is not warranted.

The types of relief that may be awarded for a violation of Section 1145 are enumerated in Section 1132(g)(2), which provides that

the court shall award the plan–

    (A)  the unpaid contributions,
    (B)  interest on the unpaid contributions,
    (C)   an amount equal to the greater of–
        (i) interest on the unpaid contributions, or
        (ii) liquidated damages provided for under the plan in an amount not in
         excess of 20 percent . . . of the amount determined by the court under
         subparagraph (A),

4

        (D)  reasonable attorney's fees and costs of the action, to be paid by the defendant, and

        (E)  such other legal or equitable relief as the court deems appropriate

29 U.S.C. § 1132(g)(2).

Plaintiffs seek unpaid benefit contributions alleged to be owed to the Funds and unpaid dues alleged to be owed to the Union for the period from January 1, 2005 to December 31, 2005.[1] Virginia Aff. ¶¶ 14-15. In support of their motion for default judgment, plaintiffs submitted an audit report computing the alleged delinquencies. *Id*. Ex. D. The amounts sought by plaintiffs are consistent with the amounts shown to be due and owing in the audit report. I therefore recommend that the Funds be awarded $3,701.20 in unpaid benefit contributions and that the Union be awarded $218.88 in unpaid dues. *Id*.

Plaintiffs also seek an award of interest and liquidated damages on the unpaid contributions and dues. For the reasons stated above, I recommend that plaintiffs be awarded interest and liquidated damages only with respect to the unpaid contributions alleged to be owed to the Funds. For ERISA violations, Section 1132 states that interest is calculated "using the rate provided for under the plan, or, if none, the rate prescribed under section 6621 of Title 26." 29 U.S.C. § 1132(g)(2). Pursuant to the 2004-2007 CBA, the applicable interest rate is 10% per annum. Virginia Aff. Ex. C, Art. 2, § 23. In their motion for default judgment, plaintiffs seek an award of interest beginning from July 2, 2005, a midway date for the period of

---

[1] In their complaint, plaintiffs also seek "benefit contributions in an unknown amount to be determined by a court-ordered audit covering the period from January 1, 2006 though present . . . ." Compl. ¶ 34. Plaintiffs, however, did not renew this request in their motion for default judgment and I therefore deem it abandoned.

delinquency.[2] Virginia Aff. ¶ 19. Accordingly, I recommend that the Funds be awarded interest at the rate of 10% per annum on $3,701.20 in unpaid benefit contributions, beginning from July 2, 2005, to be calculated by the Clerk of the Court through the date of judgment. Section 1132 also provides for an award of liquidated damages equal to the greater of the interest due or the amount provided for under the plan, up to a maximum amount of 20% of the unpaid contributions. The CBA in this case provides for liquidated damages equal to 20% of the amount of the unpaid contributions. Virginia Aff. Ex. C, Art. 2, § 23. I therefore recommend that, as plaintiffs demand, the Funds be awarded $740.24 (20% of $3,701.20) in liquidated damages.

Finally, plaintiffs seek an award of attorney's fees and costs.[3] Virginia Aff. ¶ 22. A review of counsel's billing records indicates that plaintiffs' counsel has separated time spent on behalf of the Funds and the Union, although plaintiffs' submission nowhere makes this explicit. *See*, *e.g.*, Virginia Aff. Ex. E, at pp. 2 of 9, 5 of 9 (two billing entries dated Dec. 12, 2007, each billing different clients for the same work). For the purposes of this report and recommendation, and although plaintiffs have not established that they are entitled to attorney's fees incurred suing for unpaid union dues, I ignore this distinction. I do so because I

---

[2] New York law permits the accrual of pre-judgment interest from a "single reasonable intermediate date" when damages are incurred over a period of time. *See* N.Y. C.P.L.R. 5001(b).

[3] In their complaint, plaintiffs also seek costs related to the audit. *See, e.g.,* Compl. ¶ 24. "Requests for audit costs are generally determined by utilizing the same standards the court applies in awarding attorneys' fees. . . . [and thus] must include, at minimum, some breakdown of the auditors' rates charged and hours expended." *Trustees of Plumbers Local Union No. 1 Welfare Fund v. Axiom Plumbing & Heating Corp.*, 2009 WL 2461738, at *5 (E.D.N.Y. Aug. 11, 2009) (internal citations and quotation marks omitted). I first note that plaintiffs did not renew their request for audit costs in their motion for default judgment and it thus appears to have been abandoned. Moreover, plaintiff has not submitted a statement of the auditor's hourly rate or the time the auditor spent. I therefore recommend that audit costs not be awarded.

6

conclude that, as a practical matter, the same fees and costs would have been incurred even if plaintiffs had sued only to recover contributions due and owing to the ERISA funds. Plaintiffs have complied with *New York State Association for Retarded Children, Inc. v. Carey*, 711 F.2d 1136, 1148 (2d Cir. 1983), which requires that contemporaneous time records be submitted with all fee applications. *Id*. Ex. E. The hourly rates charged and time expended appear reasonable. The total amount sought in fees is $1001.77, Virginia Aff. ¶ 22 and Ex. E, and plaintiffs should be awarded that amount. I also recommend that the Funds be awarded the $350 for the court filing fee and $100 in service fees they seek.[4] Ex. E at pp. 8 of 9.

   3.   *Injunctive Relief*

Although the complaint seeks a permanent injunction directing defendant to remit contribution reports, pay fringe benefit contributions and submit to an audit, Compl. ¶¶ 36-40, this relief is not requested in plaintiffs' motion for default judgment. Even assuming that plaintiffs had renewed their request for a permanent injunction, I would, absent a more compelling showing, nevertheless recommend that it be denied. While a permanent injunction is an appropriate remedy under ERISA, see, e.g., *Beck v. Levering,* 947 F.2d 639, 641 (2d Cir. 1991), plaintiffs have failed to meet the prerequisites for issuing a permanent injunction—a showing of "irreparable harm and the absence of an adequate remedy at law". *La Barbera v. Les Sub-Surface Plumbing Inc.*, 2008 WL 906695, at *10 (E.D.N.Y. Apr. 3, 2008) (citing *Rondeau v. Mosinee Paper Corp.*, 422 U.S. 49, 57, 95 S. Ct. 2069 (1975)). Rather, plaintiffs only offer the conclusory allegation that the Funds "will suffer immediate and irreparable injury" unless defendant is enjoined from failing to submit required reports, pay required contributions and

---

[4] Although plaintiffs' counsel states in his affirmation that plaintiffs seek $120 in service fees, Virginia Aff. ¶ 22, the attached exhibits indicate that plaintiffs only expended $100 in service fees. *Id*. Ex. E.

7

cooperate in an audit. Compl. ¶ 39. Such an allegation is insufficient to show that money damages will prove inadequate to deter future violations, absent an injunction. *See, e.g., Les Sub-Surface Plumbing*, 2008 WL 906695, at *10. Accordingly, I recommend that plaintiffs' request for a permanent injunction be denied.

## Conclusion

For the reasons set forth above, I respectfully recommend that Generation II be held liable in the following amounts: (1) $3,701.20 in unpaid contributions to the Funds; (2) $218.88 in unpaid dues to the Union; (3) interest to the Funds at the rate of 10% per annum on $3,701.20 in unpaid benefit contributions, beginning from July 2, 2005, to be calculated by the Clerk of the Court through the date of judgment; (4) $740.24 in liquidated damages to the Funds; and (5) $1,451.77 in attorney's fees and costs to the Funds.

Any objections to the recommendations made in this Report must be filed within ten days of this Report and Recommendation and, in any event, on or before September 30, 2009. Failure to file timely objections may waive the right to appeal the District Court's Order. *See* 28 U.S.C. § 636(b)(1); FED. R. CIV. P. 6(a), 6(d), 72; *Small v. Sec'y of Health & Human Servs.*, 892 F.2d 15, 16 (2d Cir. 1989). Plaintiffs are hereby directed to serve a copy of this Report upon defendant at its last known address, and to file proof of service with the Court.

/s/
**STEVEN M. GOLD**
**United States Magistrate Judge**

Dated: Brooklyn, New York
September 9, 2009

U:\IRM 2008-2009\Damages Inquests\Trustees v. Generation II\trustees v. generation II_inquest_v1.docx